UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GEOFFREY D. PETERSON,**

**Plaintiff,**

-vs-                                    Case No.  6:04-cv-1050-Orl-18JGG

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

**Defendant.**

_____

# MEMORANDUM OF DECISION

Plaintiff Geoffrey D. Peterson ["Peterson"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying Peterson's application for a period of disability and disability insurance benefits.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

On February 29, 2000, Peterson filed an application for supplemental security income and disability insurance benefits.  The Social Security Administration ("SSA") denied his application at the initial and reconsideration levels, and Peterson timely requested a hearing.

The Honorable Apolo Garcia, Administrative Law Judge ("ALJ"), held a hearing on October 11, 2001.  R. 36 - 66.  Richard Hall, a Vocational Expert ("VE"), and Patricia Vanderdush, a witness, also testified at the hearing.  On November 29, 2001, the ALJ issued an unfavorable decision.  R. 11 -

20.  The ALJ concluded that, based on the VE's testimony, Peterson could perform other work in the national economy and therefore was not disabled.[1]  R. 20, Findings 13 - 14.

Peterson requested review of the ALJ's decision on December 26, 2001, but presented no new evidence to the Appeals Council.  R. 275 - 78.  On May 6, 2004, the Appeals Council concluded that there was no basis to overturn the ALJ's decision, and denied Peterson's request for review.  R. 6 - 8.  On July 9, 2004, Peterson timely appealed the final decision to the United States District Court.  Docket No. 1 at 1.  On June 6, 2005, Peterson filed in this Court a memorandum of law in support of his appeal.  Docket No. 22.  On September 6, 2005, the Commissioner filed a memorandum in support of her decision that Peterson was not disabled.  Docket No. 25.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Peterson assigns two errors to the Commissioner.   First, Peterson claims that the Commissioner erred in finding that Peterson could perform other work in the national economy because the ALJ's findings are not supported by substantial evidence.  Second, Peterson claims that the Commissioner erred in disregarding Peterson's subjective complaints.

The Commissioner argues that substantial evidence supports her decision to deny disability.  First, the Commissioner argues that the ALJ's findings were supported by substantial evidence.  Docket No. 13-1.  Second, the Commissioner argues that the ALJ did not disregard Peterson's subjective complaints in posing his hypothetical questions to the VE.

---

[1]The Social Security ALJs face a herculean task.  The Commissioner now expects ALJs to hear and decide 50 to 55 decisions per month according to a former Chief ALJ in a July 2005 presentation at a Federal Judicial Center workshop on disability appeals.  With only the help of non-attorney decision-writers and staff attorneys, the ALJs must rapidly process a monumental backlog of thousands of complex, aging cases.  The effects are felt in the district court. According to the AOUSC, the Middle District of Florida has the third highest volume of disability appeals in the nation.  Each magistrate judge in the Orlando Division, for example, resolves approximately fifty-three appeals every year  —  an average of about one per week.

III.    **THE STANDARD OF REVIEW**

A.    **AFFIRMANCE**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

B.    **REVERSAL**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  The district court will reverse a

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

## C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.

-4-

1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92; *Cannon*

*v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also, Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[2] *Id.*

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.   DEVELOPING THE RECORD

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.*

hearing, and to solicit a knowing and voluntary waiver of that right. *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734. The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

## B.    THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520 (b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520 (c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520 (d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520 (e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him

from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423 (d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"].  This assessment measures whether a claimant can perform past relevant work despite his or her impairment.  20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this

determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant.  *See* SSR 82-61.  If so, the claimant is not disabled.  If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy.  SSR  82-61.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or  her insured status for the purposes of disability benefits.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), (c).  If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite the claimant's disability.  *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

## C.    OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201

(11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"].  *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a

wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.   TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician.  *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);  *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527 (e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.     PAIN

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; *Walker*, 826 F.2d at 1003.

Congress has determined that a claimant will not be considered disabled unless he furnishes medical

and other evidence (*e.g.*, medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C.

§ 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence.  20 C.F.R. § 404.1529.  In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the

pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising
> from that condition or (3) that the objectively determined medical condition is of such
> a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone

can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself,

conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### F.     CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

*Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th

Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not

disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### G.    MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (failure to order such an evaluation may be

-14-

reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

V.    **APPLICATION AND ANALYSIS**

  A.    **THE FACTS**

Peterson was born on September 26, 1960 (R. 92), and was 41 years old at the time of the ALJ's decision on November 21, 2001.  R. 15.  Peterson has a high school education, and specialized training in ceramic tile and marble installation.  R. 103.  Peterson also has one and one-half years of vocational training in the field of architectural engineering.  R. 42.  Peterson has past relevant work experience as a ceramic tile and marble installer. R. 98.  Peterson is unable to perform any of his past relevant work.  R. 19.   He has not engaged in substantial gainful activity since the alleged onset date of his disability.  R. 19.

On August 1, 1999, Dr. Paquette with the Halifax Medical Center emergency department saw Plaintiff for his complaints of pain to the back of the head and numbness to the fingers.  Plaintiff reported being assaulted in a local bar.  He was inebriated and was pushed down, his head hit the pavement with possible loss of consciousness.  CT scan of the head was negative.  The diagnosis was ethyl alcohol abuse, scalp contusion and otitis media.  R. 184 - 86.

On January 31, 2000, Dr. Martin with the Memorial Hospital emergency room saw Plaintiff for complaints related to his back and neck after falling from a horse.  R. 141, 145-47. The cervical spine was determined to be normal.  R. 152.  X-rays of the ribs, however,  revealed multiple rib fractures on the left side with no evidence of pneumothorax or effusion.  R. 153.  Plaintiff was

-15-

prescribed Toradol and Tylenol #3, and was released.  R. 146-47.  Dr. Martin further instructed Peterson not to work that week, and not to engage in heavy lifting for two to three weeks.  R. 148.

On February 22, 2000, Dr. Shedd with the Halifax Medical Center emergency department saw Plaintiff for his complaints of back and chest pain.  Plaintiff reported that approximately three weeks ago, he was in a motorcycle (also described as a three-wheeler) accident.  He reported having a rib fracture associated with an injury from January.  X-rays of the lumbar and thoracic area showed a grade III compression fracture of the right thoracic vertebrae believed to be either T9 or T10.  Dr. Shedd's diagnosis was moderate to marked compression fracture with continued pain.  R. 251 - 53.  Dr. Shedd prescribed Lortab for pain and recommended a neurosurgical follow-up for continued treatment.  R. 252.

On April 17, 2000, Dr. Stibbins with the Halifax Medical Center emergency department saw Plaintiff due to Plaintiff's complaints of back pain.  Dr. Stibbins diagnosed a history of a compression fracture with continued pain.  R. 244 - 45.  Peterson reported that he had been following up with Dr. King, who had been prescribing medications, but he no longer was seeing Dr. King.  R. 244.[3]  Plaintiff has not been wearing the prescribed back brace.  Dr. Stibbins instructed Peterson to wear a brace and gave Peterson a Hydrocodone prescription.  R. 244-45.

On April 20, 2000, Dr. Bowden with the Halifax Crosslin Health Center examined Peterson.  Peterson reported that he flipped over on a three wheeler on January 24, 2000, and has been treated for pain by Dr. Gaines.[4]  Although Peterson presented with a history of T8 compression fracture,

---

[3]The administrative record does not appear to contain Dr. King's treatment records.

[4] Although the Social Security Administration's Explanation of Determination states that it received Dr. Gaines's response on June 5, 2000 (R. 266), the Court did not locate any document from Dr. Gaines in the record, nor does any party cite to any records reflecting treatment by Dr. Gaines.

Dr. Bowden's exam revealed full range of motion in the back with tenderness along the thoracic spine in the T6-T8 area. Dr. Bowden noted increased tenderness in the right paraspinal muscles of the same area. Dr. Bowden referred Peterson to an orthopaedic clinic, and prescribed pain medication. R. 155 - 56.

On May 9, 2000, Dr. Mohammed with the Halifax Medical Center emergency department saw Peterson for his reported back pain. Peterson described the pain as dull and non-radiating with no numbness, tingling, weakness or paralysis associated with it. On examination, there were no focal, motor or sensory deficits. Peterson demonstrated normal strength, sensation and coordination. Dr. Mohammed discharged Plaintiff, prescribed Lortab and directed Peterson to follow up at the Keech Street Clinic. R. 238 - 39.

On May 23, 2000, Gerald Woodard, D.O., evaluated Plaintiff, apparently in connection with Plaintiff's claim for disability benefits filed with the State of Florida. Peterson complained of cephalgia beginning at the back of the neck and going up into his head and pain in both sides of the neck. An examination of the cervical spine revealed full range of motion with no paraspinal musculature spasm present. An examination of the thoracolumbar spine revealed full range of motion with mild paraspinal musculature spasm present and marked pain with motion. Heel, toe and tandem walking was accomplished but with extreme effort. He also exhibited difficulty in his ability to stand, walk, lift and carry due to back and knee injuries. There were no deficits in gait, grip strength or fine manipulation. R. 158 - 62. Dr. Woodard concluded that Peterson has: full cervical range of motion, full lumbar range of motion but very painful, compression fracture lumbar spine, ORIF right tibia,

ambulates without assistance, internal derangement of left knee and Peterson exhibits maximum effort in all testing.  R. 162.

On June 12, 2000, Dr. Murry with the Port Orange Urgent Care Center emergency department saw Peterson for his complaints of mid-level back pain.  Peterson reported that he was under the care of an orthopedist at the Keech Street Clinic,[5] but that his appointment for that day had been cancelled due to a physician emergency.  Peterson reported that he had been taking Lortab and was supposed to wear a thoracic brace, but that he lacked the funds for the brace. The clinic took X-rays of the thoracic area, which did not reveal any slipping but noted that there appears to be mild worsening at the anterior aspect of T8.  Dr. Murry refilled Peterson's Lortab prescription, and told him that care for his condition is not appropriate at an urgent care or emergency department.  R. 230 - 31, 237.

On July 6, 2000, Dr. Adams with the Halifax Medical Center emergency department saw Peterson in response to his request to refill his Lortab prescription.   Peterson complained of severe, constant pain in the mid-thoracic area.  Examination of the back revealed subjective discomfort in the mid-thoracic area.   Dr. Adams gave Peterson Lortab and directed Peterson to follow up with his doctor (whom Peterson named as Dr. Gillespy).[6]  R. 223, 229.

On August 31, 2000, Dr. Doan with the Port Orange Urgent Care Center emergency department saw Peterson for his complaint of right ankle pain.  Peterson reported dropping a heavy jack on his ankle.  X-rays revealed no fracture.  The diagnosis was right ankle contusion.  Dr. Doan gave Peterson a prescription for pain medication, Plaintiff's ankle was wrapped with an Ace bandage,

---

[5] The administrative record does not contain any records of Plaintiff's alleged treatment at the Keech Street Clinic.

[6] The administrative record does not contain any documentation of Plaintiff's alleged treatment by Dr. Gillespy.

and Dr. Doan recommended that Peterson apply ice and elevate the foot.  Peterson was advised to follow up with Dr. Gaines.  R. 215.

On January 19, 2001, Dr. White with the Halifax Medical Center emergency room saw Peterson for his complaints of low back pain after doing some heavy lifting.  Peterson had lumbar muscular tenderness, with full range of motion but some pain flexion and full extension.  Dr. White prescribed muscle relaxers, pain medication, and gave Peterson motion exercises.  R. 208.

On September 11, 2001, Peterson presented to Halifax Medical Center emergency department with complaints that his ears were "plugged up".  He was diagnosed with bilateral ear pain/otalgia, mild cerum.  He was prescribed medication and released.  R. 201 - 02.

Peterson smokes two packs of cigarettes a day.  R. 141, 159.  Peterson also drinks alcohol daily, consuming a case per week, including a six-pack per day on weekends.  R. 141, 155, 159.[7]

**B.      THE ANALYSIS**

Peterson assigns two errors to the Commissioner.   First, Peterson claims that the Commissioner erred in finding that Peterson could perform other work in the national economy because the ALJ's findings are not supported by substantial evidence.  Second, Peterson claims that the Commissioner erred in disregarding Peterson's subjective complaints.

**1.      The ALJ Did Not Err in Evaluating Peterson's Subjective Complaints**

Peterson argues that the ALJ failed to make a specific credibility finding and, therefore, Peterson's testimony regarding his subjective pain must be taken as true.  The ALJ's decision states that he found little evidence of impairments of the severity described by Peterson, and gave limited

---

[7] The medical records do not further specify what type of alcohol Peterson consumes.

weight to Peterson's testimony.  R. 17.  Specifically, the ALJ found little in the way of objective

medical evidence to support Peterson's claims of pain.  The ALJ noted inconsistencies in Peterson's

testimony where he performed heavy lifting beyond his alleged limitations.  The ALJ also noted

Peterson's ability to cook and do light housework.  Further, the record shows that there was a time

when Peterson made multiple visits to emergency rooms to obtain pain medications, but Peterson has

taken no prescribed medication for over a year.  R. 17.

Peterson argues that his failure to follow prescribed treatment when he cannot afford the

treatment does not preclude a finding that he is disabled, and the ALJ must consider his inability to

pay for treatment.  Peterson testified that he was not currently taking medications because he did not

have insurance with his business and had no doctor.  R. 47.  First, substantial other evidence shows

that Peterson was able to obtain pain medications from emergency and urgent care centers when

Peterson had no insurance and no regular doctor.  Second, the record shows that Peterson smoked two

packs of cigarettes a day and consumed a case of alcohol per week.  While Peterson has the right to

make his own lifestyle choices, the purchase of large quantities of cigarettes and alcohol is

inconsistent with his argument that he cannot afford to pay for prescribed treatment.  *See Sias v. Sec'y*

*of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (court took judicial notice of the

monetary cost of a two pack a day smoker and dismissed claimant's argument that he could not afford

support hose).  The ALJ's discrediting of Peterson's testimony regarding his ability to pay for pain

medication is clear from the ALJ's ruling so as to amount to a specific credibility finding.

Even if the Court were to exclude the ALJ's findings regarding Peterson's failure to take

medication, the ALJ has articulated other specific and adequate reasons for not to crediting Peterson's

-20-

testimony about pain and there is substantial supporting evidence for the ALJ's findings.  The Court, therefore, will not disturb the ALJ's credibility findings.

2.       **The ALJ's Finding that Peterson Can Perform Other Work is Supported by Substantial Evidence**

The ALJ properly determined that Peterson could not perform his past relevant work.  R. 19, Finding No. 8.  The burden, therefore, shifted to the Commissioner to show that there was other work in the national economy that Peterson could perform.  Even though the ALJ found Peterson capable of performing a full range of sedentary work  —  could have relied on the Medical Vocational Guidelines  —  the ALJ appropriately obtained testimony from a VE.  Reliance on VE testimony is proper where the hypothetical questions posed by the ALJ accurately depict a claimant's impairments.

Peterson argues that the VE's opinion was based on incomplete hypothetical questions and, therefore, the VE's testimony was not substantial evidence.  Specifically, Peterson argues that the VE was not told that Peterson could not perform any repetitive bending or squatting, even though the ALJ found that Peterson was so limited.  R. 19.  Peterson further argues that the VE testified that limitations on repetitive bending or squatting would hinder Peterson's ability to perform the other jobs identified by the VE.  Docket No. 22 at 6.  A full reading of the transcript, however, does not support Peterson's argument.

The ALJ asked the VE a detailed series of hypothetical questions.  The VE considered an individual of Peterson's background who:

> Assume that I find  —  that I give full credit to his testimony, as given here today, where he's only able to walk about a block.  He can only stand for about 15 minutes at a time, and he can only sit for 20 to 30 minutes at a time.  He has difficulty standing.  He can lift 15 to 18 pounds in either hand.  He's in constant pain, back pain, and with his

knees, and he also suffers from constant spasm.  Assume that this is true description of his daily restrictions.

R. 59.  The VE stated that Peterson would not be able to perform his past relevant work, but was capable of performing other work available in the economy.  R. 60.  The ALJ identified positions such as non-stocking cashier (8,000 positions regionally and 91,000 nationally), quality control inspector (7,000 regionally and 79,000 nationally), and "assembly jobs" (8,000 regionally and 81,000 nationally).  R. 60.

Next, the ALJ asked the VE to:

Assume that I find that from an exertional strength point he can lift and/or carry ten pounds occasionally and less than ten pounds frequently .  He can stand at least two hours in an eight-hour workday.  He can sit about six hours in an eight-hour workday, and push and pull would be limited in the lower extremities.  Climbing ramps, stairs, would be occasionally.  Climbing ladders, ropes, scaffolds, never.  Balancing, stooping, kneeling, crouching, crawling, occasionally.  He should avoid exposure, concentrated exposure, of working around unprotected machinery or moving machinery and unprotected heights, heat, water, fire.

R. 60.  The VE responded that such a person would still be unable to perform his past relevant work, but remained capable of performing the previously articulated positions.  R. 61.  The ALJ's reliance on the VE's testimony is proper, and yielded the same result as that obtained when the grids were applied to the full range of sedentary work.  Both the grids and the VE's testimony support the ALJ's conclusion that Peterson was not disabled.

When determining a plaintiff's RFC, the ALJ's inquiry is concerned with whether the plaintiff's documented impairments cause functional limitations.  See 20 C.F.R. § 404.1545.  The regulations provide that the ALJ must use medical records, including observations from examining or treating medical sources, to decide to what extent the documented impairments preclude Peterson from

-22-

performing particular work activities.  See 20 C.F.R. § 404.1545(a).  The regulations further provide that the ALJ has the right to determine what weight he gives to a medical source.  See 20 C.F.R. § 404.1527(d).  It is the role of the ALJ, as the finder of fact, to weigh all of the evidence of record, resolve conflicts in the record, and decide Peterson's RFC.  See 20 C.F.R. §§ 404.1545, 404.1546.

Relevant medical evidence in this case documents that early in 2000, Peterson sustained a compression fracture and some broken ribs that imposed some short term functional limitations on his ability to perform heavy lifting, but there were no long term functional limitations imposed by a treating physician.  On his alleged onset date in January 2000, emergency physicians at Memorial Hospital merely advised Peterson to avoid "heavy lifting" for two to three weeks.  R. 148.  At some point thereafter he was told to wear a back brace.  R. 245.

Despite his alleged impairments, Peterson apparently did not wear the back brace prescribed by his physicians.  R. 155, 244, 230.  Although Peterson alleges he chose not to wear the back brace because he could not afford it, this assertion is inconsistent with Peterson's expenditures on smoking and drinking.

Medical records indicate that in the six months immediately following the broken bones, Peterson sought treatment approximately once a month.  However, less than three months after he broke the bones, Peterson was noted not to be following the physicians' instructions.  R. 244.  By August 2000, Peterson admitted he was carrying heavy objects such as jacks, which would indicate his broken bones were healing well.  R. 215.  Peterson did not seek treatment again until nearly a year after his alleged onset date when Alex White, M.D. documented that he was experiencing "just some low back discomfort and tightness" after he did some heavy lifting.  R. 208.  Dr. White documented

-23-

that Peterson should do some range of motion exercises, but imposed no functional limitations.   R. 208.  Peterson received no further medical treatment other than for a complaint of excessive ear wax in September 2001.   R. 201-07.

The sole consultative examination occurred only three months after Peterson suffered the compression fracture and broken ribs.   R. 158-64.  Gerald R. Woodard, D.O., advised that Peterson was still experiencing pain from the recent breaks and stated he had difficulty in his ability to stand, walk, lift, and carry.  R. 162.  The only specific limitations included in the medical evidence were non-binding suggestions from state agency medical experts shortly after the bones were broken that advised Peterson was capable of sedentary work with some postural limitations.

Despite the minimal medical treatment after the initial fracture, and Peterson's apparent recovery and return to lifting heavy objects, the ALJ nonetheless posed a hypothetical question to the VE that gave Peterson's highly self-limiting testimony "full credit."  R. 59.  Assuming, *arguendo*, that Peterson was fully accurate in describing his activities and abilities, the VE nevertheless used Peterson's description in opining that Peterson was capable of work available in the economy. Peterson's suggestion that the ALJ should have included other functional limitations in the hypothetical question is beyond what Peterson's testimony alleges.  The VE testimony supports the ALJ's conclusion that Peterson was not disabled.

Alternatively, Peterson suggests that the ALJ's erred in failing to include a prohibition on repetitive bending and stooping in the second hypothetical question.  *See* Peterson's Br. at 6. However, repetitive bending and stooping are not typically elements of sedentary work.  Sedentary work is defined as involving "lifting of no more than 10 pounds at a time and occasionally lifting or

carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

Postural limitations or restrictions related to activities such as bending or squatting do not erode the

sedentary base because those activities are not usually required in sedentary work. See Social Security

Ruling 96-9p, 61 Fed. Reg. 34478, *34482 (July 2, 1996). Substantial evidence supports the ALJ's

decision, and remand is unnecessary.

**VI.**     **CONCLUSION**

        For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.

        **DONE** and **ORDERED** in Orlando, Florida on December 20, 2005.

                                        JAMES G. GLAZEBROOK
                                        UNITED STATES MAGISTRATE JUDGE

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL               33602

The Honorable Apolo Garcia
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL             32817